```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                          WESTERN DIVISION
```

|  |  |  |
|---|---|---|
| HIGH CONCRETE TECHNOLOGY, LLC, | : : : | |
| Plaintiff, | : : | NO. 1:07-CV-00395 |
| v. | : : | **OPINION AND ORDER** |
| KOROLATH OF NEW ENGLAND, Inc., et al., | : : : | |
| Defendants. | : | |

This matter is before the Court on Plaintiff High Concrete Technology, LLC's Motion for Summary Judgment on Liability (doc. 58), Defendant Korolath of New England, Inc.'s Response in Opposition (doc. 63), and Plaintiff's Reply (doc. 65). The Court held a hearing on this matter on November 26, 2008. For the reasons indicated herein, the Court DENIES Plaintiff's Motion.

**I. BACKGROUND**

This case involves a dispute over plastic "non-slip shims," which Defendant Korolath of New England, Inc. ("Korolath") sold to Plaintiff High Concrete Technology, LLC ("High Concrete") for use in its construction projects. The shims are used in construction to level and support precast concrete and other structures, and they must be able to bear large amounts of weight. Plaintiff installed Defendant's shims in at least eighteen construction projects, and complains that it was forced at great

expense to replace many of the shims, because they were defective in failing to bear the loads placed upon them.  In the instant motion, Plaintiff seeks a ruling of summary judgment on the liability of Defendant Korolath for breach of express and implied warranties under Ohio law, and for breach of contract (doc. 58). Defendant denies liability to Plaintiff, arguing that it did not expressly warrant the shims to tolerate the compressive strength rates Plaintiff claims, and that in any event, Plaintiff installed the shims improperly, which caused their failure (doc. 63).

The facts giving rise to this dispute, taken from the pleadings and from the evidence, are as follows:  Plaintiff's engineering manager Dwayne Robinson called Defendant's sales representative, William Cosgrove, on or about February 16, 2005, inquiring about shims (doc. 58).  In response to the call, Cosgrove sent Robinson a brochure which described the shim strips as having high compressive strength suitable for use with precast concrete structures and having "Compressive strength of 8 to 9,000 psi with no fracture even at 26,000 psi" (Id.).  At the hearing, Defendant proffered Cosgrove's deposition testimony, which reflects that Cosgrove qualified the psi strength for non-slip shims as "approaching" 5,200 psi, with decreasing strength if the shims were stacked.  According to Defendant, although Cosgrove sent Robinson the brochure representing higher psi levels, he also sent other pages by fax showing 5,200 psi.

Plaintiff purchased 190,000 of Defendant's shims in late 2005, paying $23,892.79 (doc. 58). On or about May 19, 2006, Plaintiff's Engineering Coordinator notified Defendant of the failure of its plastic shims at multiple job sites (Id.). Defendant eventually ordered compression tests on samples it sold to Plaintiff, and found compressive strengths between 3,600 and 6,000 psi (Id.). Defendant's later tests similarly showed compressive strengths less than 8,000 psi (Id.). Finally, Defendant's subcontractor Spartech Plastics ("Spartech") conducted tests in September 2006, and forty out of forty-one samples showed strengths less than 5,200 psi.

Defendant determined that Spartech, which manufactured the shims, had used improperly recycled plastic and too much rubber thus reducing their compressive strength (Id.). Evidence in the record further shows that Cosgrove and Korolath's Treasurer, Michael Famiglietti, made statements that the shims were defective and had compressive strengths that were too low (Id.).

Plaintiff argues there is no genuine dispute of material fact that Defendant breached an express warranty by selling shims with compressive strengths far below those advertised in Defendant's brochure, and breached the implied warranty of merchantability and fitness for a particular purpose because the shims did not measure up for their intended use (Id.). Plaintiff similarly argues Defendant breached the sales contract and the duty

3

of good faith and fair dealing by failing to supply shims meeting specifications (Id.).

**II. ANALYSIS**

**A. The Summary Judgment Standard**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Fatton v. Bearden, 8 F.3d. 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and non-movant are well settled. First, "a party seeking

of good faith and fair dealing by failing to supply shims meeting specifications (Id.).

**II. ANALYSIS**

**A. The Summary Judgment Standard**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Fatton v. Bearden, 8 F.3d. 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and non-movant are well settled. First, "a party seeking

summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>see</u> <u>also</u> <u>LaPointe</u>, 8 F.3d at 378; <u>Garino v. Brookfield Township Trustees</u>, 980 F.2d 399, 405 (6th Cir. 1982); <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. <u>See</u> <u>Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A.</u>, 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. <u>See</u> <u>Celotex</u>, 477 U.S. at 317; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of <u>material</u> fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." <u>Anderson</u>, 477 U.S. at 247-248 (emphasis added); <u>see</u> <u>generally</u> <u>Booker v. Brown & Williamson Tobacco Co., Inc.</u>, 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence

of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc.,

369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**B. Plaintiff's Motion for Summary Judgment**

At the hearing Plaintiff proffered a copy of the brochure that Cosgrove faxed to Robinson which indicates the shims have compressive strength of 8 to 9,000 psi. Plaintiff further proffered an October 17, 2006 letter from Defendant's Treasurer, Michael Famiglietti, to Spartech Plastics stating "it is apparent that the defective shims fail to have adequate compressive strength," as well as the various tests results showing compressive strengths below 8,000 psi. In Plaintiff's view there is no genuine dispute of material fact as to Defendant's liability in this matter.

Defendant responded at the hearing with essentially two arguments. First, Defendant argues that Mr. Cosgrove verbally indicated to Plaintiff that the non-skid shims would have a

compressive strength "approaching" 5,200 psi, such that there was no express warranty that the shims would be able to support 8,000 to 9,000 psi. Defendant argues Cosgrove's testimony shows he faxed other pages along with the brochure, which reflect 5,200 psi as the appropriate number. In Defendant's view, its test results show eighteen of twenty-two samples exceeding 5,200 psi, consistent with Cosgrove's representation.

Second, Defendant argues that Plaintiff installed the shims incorrectly, and outlined several types of installation errors: Plaintiff's stacking of shims beyond design standards, staggering of shims and misalignment of shims, and the installation of shims smooth side to smooth side so that they would fail to lock together. For all of these reasons, Defendant argues there is a genuine issue of fact as to whether the failures were caused by Plaintiff's installation errors or by the shims themselves.

In its briefing Defendant further argues that it provided Plaintiff with warranty disclaimer and limitation of liability language on its invoices (doc. 63). It argues its limitation of liability clause requires any claims must be made within thirty days after the product reaches its destination, and Plaintiff took about three months to make a claim after the last shipment of shims (Id.). Defendant further argues the clause limits Plaintiff's remedy to the purchase price of the shims (Id.).

As for Plaintiff's claim that Defendant failed to act in

good faith, Defendant argues such a claim is as a matter of law left for the trier of fact to determine (Id. citing Gilson v. Windows and Doors Showcase, LLC, 2006 Ohio App. LEXIS 2807 *P20 (Ohio Ct. App., June 9, 2006)(whether a party acts in good faith is a question generally left to the trier of fact)). Moreover, argues Defendant, there are genuine issues as to whether the shims were actually deficient such that it had ample ground to dispute Plaintiff's allegations (Id.). Defendant argues it met with Plaintiff in good faith, and divulged compression test results even though the results were not favorable to Defendant (Id.). Under these facts, it argues, there is a genuine dispute as to whether it acted in good faith (Id.).

Finally, as for the statements by its employees that the shims were defective, Defendant responds that in all candor they expected higher psi's. However, Defendant reiterates, the psi levels still complied with the 5,200 psi standard warranted by Cosgrove.

Plaintiff responded that the warranty in the brochure is clear on its face, but that even if the Court would find 5,200 psi is the compressive strength that Defendant warranted, the Spartech tests showed forty of forty-one samples came out below that figure. Moreover, argues Plaintiff, four samples that Defendant tested also came out below 5,200 psi. In Plaintiff's view, the fact that the psi levels varied shows no consistency in the compressive strength

9

of the shims, something which it was entitled to expect, at whatever level of psi.

Plaintiff conceded at the hearing that some mistakes were made with the installation of the shims, but that its remediation efforts were driven by the failure of the shims. Plaintiff argues that regardless of any errors, there is no real dispute that in many instances the problem was the shims themselves being defective and too weak rather than erector error.

In its briefing, Plaintiff argues that Defendant attempts to concoct genuine issues of material fact, but that they are either irrelevant to liability or too insubstantial and speculative to qualify as "material" (doc. 65). Plaintiff further argues the warranty disclaimer that Defendant relies upon is ineffective because Plaintiff never expressly agreed to such disclaimer, and Defendant sent it to Plaintiff only after Plaintiff received the shims (Id.).

Spartech filed a "Limited Response" addressing footnote two in Plaintiff's Reply concerning Spartech's compression tests (doc. 68). Spartech argues although it produced the test report, such report is not automatically admissible for any purpose, especially not as expert testimony (Id.).

## III. Discussion

Having reviewed this matter, the Court finds that taking all inferences in favor of the non-moving party, as it is required

to do under the applicable standard, Plaintiff is not entitled to judgment as a matter of law. See Matsushita, 475 U.S. at 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). The Court finds a genuine dispute as to the material fact about the representation that William Cosgrove made to Dwayne Robinson, and concludes that the trier of fact must make a credibility determination based on the testimony of these two witnesses. It is not the role of the Court to make credibility determinations in ruling on summary judgment, and therefore it is constrained from finding in Plaintiff's favor. Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994)(the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion).

Should the trier of fact conclude that Cosgrove warranted compressive strengths "approaching" 5,200 psi, or at "8 to 9,000 psi" then it will have to determine whether the evidence shows such warranty met or breached. Plaintiff has a great deal of compelling evidence, no doubt, especially if the jury determines the warranty was at 8,000 psi. In the alternative, should the jury determine that 5,200 psi is the appropriate number, it is clear that Defendant's own testing produced results of 3,647 psi, 4,110 psi, 4,756 psi, and 4,827 psi, all of which fall below 5,200 psi. However, these figures might be reasonably considered as "approaching" 5,200 psi, depending on how the trier of fact

11

interprets the warranty, the relative differences in psi, and the validity of the sample size.  The same principles apply to the Spartech test report numbers, which appear to be highly relevant business records, should they ultimately be admitted into evidence before the jury.

The Court does not find Defendant's arguments based on installation error persuasive.  Should the trier of fact find the warranty breached, then the question of remediation of alleged defective shims is independent of any alleged installation error. Finally, the Court sees no evidence that there was a meeting of the minds as to a warranty, and thus rejects Defendant's contention that it escapes potential liability under such theory.

For all of these reasons, the Court DENIES Plaintiff High Concrete Technology, LLC's Motion for Summary Judgment on Liability (doc. 58).

SO ORDERED.

Dated:   December 2, 2008         /s/ S. Arthur Spiegel
                                  S. Arthur Spiegel
                                  United States Senior District Judge