```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

|                              |   |                      |
|------------------------------|---|----------------------|
| HIGH CONCRETE TECHNOLOGY, LLC, | : |                    |
|                              | : |                      |
| Plaintiff,                   | : | NO. 1:07-CV-00395    |
|                              | : |                      |
| v.                           | : |                      |
|                              | : | **OPINION AND ORDER** |
| KOROLATH OF NEW ENGLAND, Inc., et al., | : |            |
|                              | : |                      |
| Defendants.                  | : |                      |

This matter is before the Court on Third-Party Defendants Spartech Plastics, LLC, Alchem Plastics, Inc., and Atlas Alchem Plastics, Inc.'s Motion for Summary Judgment on Korolath of New England, Inc.'s Second Amended Third-Party Complaint (doc. 95), Korolath's Response in Opposition (doc. 103), and the Third-Party Defendants' Reply (doc. 106). The Court held a hearing on this matter on August 11, 2009. For the reasons indicated herein, the Court denies the motion.

**I. Background**

This case involves a dispute over plastic "non-slip shims" sold by Defendant Korolath of New England ("Korolath") to Plaintiff High Concrete Technology, LLC ("High Concrete")(doc. 1). Plaintiff installed Defendant's shims in at least eighteen construction projects, and complains that it was forced at great expense to replace all the shims, because the shims were defective

in failing to bear the loads placed upon them (Id.). In its December 2, 2008 Order, the Court denied summary judgment to Defendant Korolath as to the question of its liability (doc. 71). Although Defendant denies liability to Plaintiff, it brought its Second Amended Third Party Complaint against Spartech Plastics, LLC, Alchem Plastics, Inc., and Atlas Alchem Plastics, Inc. (hereinafter referred to collectively as "Spartech"), alleging any liability in this case should be attributed to Spartech, which manufactured the high impact polystyrene (HIPS) that was used to make the shims (doc. 83). Korolath brings claims for (Count I) breach of contract, (Count II) breach of warranty, (Count III) Products Liability, and (Count IV) Contribution and Indemnification (Id.).

Spartech brought its Motion for Summary Judgment on June 3, 2009 (doc. 95), contending there is no dispute as to any material fact and it is entitled to judgment as a matter of law on Korolath's claims (doc. 95). Korolath responded (doc. 103), and Spartech replied (doc. 106) such that this matter is ripe for the Court's consideration.

**II. ANALYSIS**

**A. The Summary Judgment Standard**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Fatton v. Bearden, 8 F.3d. 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Garino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1982); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th

3

Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Shaeffer & Ebeling Co. L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary

4

judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the

Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**B.   Spartech's Motion for Summary Judgment**

   **1.   The Hearing; Korolath's Contract Claims**

At the August 11, 2009 hearing Spartech indicated that it had provided to Korolath since 1986 an economy version of HIPS that had no specification as to compressive strength. Spartech explained the product is made of recycled styrene, with rubber added to make it more flexible, and able to absorb impact. Spartech sold the product in sheets of differing thickness, scored so that Korolath could snap it apart, box them up and sell them as shims. In Spartech's view, the nature of the product at issue is variable, as it is an "off catalogue" cheaper polystyrene product. Spartech asserted Korolath knew this and assumed the risk by using the cheap HIPS as opposed to a more expensive higher grade HIPS, so as to economize. Spartech asserted it never made representations to Korolath as to compressive strength of the product, and that it was Korolath's responsibility to test the product and to use it for appropriate applications.

Spartech analogized its role in this matter to that of a hardware store selling two-by-fours and bolts to a constructor of decks. When the deck collapses due to the constructor's use of a single bolt to connect each two-by-four, and due to its use of a

single two-by-four for each supporting column, Spartech argues there's no valid claim against the hardware store for having provided the component parts. Here, Spartech argues it sold a component that it did not know how Korolath was marketing or how High Concrete was installing. Spartech argued that, like the hardware store, it would be unfair for it to be held liable for the actions of expert parties like Korolath and High Concrete in the use of their component part.

Korolath responded at the hearing that under the 1986 requirements contract Spartech was obligated to provide a HIPS custom blend product, it did so for twenty years, but the batch at issue in this case varied widely in quality because the rubberized content ranged from less than half a percent to twenty-five percent. Korolath argued that Spartech's internal specification sheets required Spartech to conduct quality control impact testing, which it did not do. Korolath proffered what it represented to be the product in question and showed how the material could bend like "taffy," as opposed to staying rigid, as another sample of "original" product that would not bend. The essence of its Complaint against Spartech, contended Korolath, is that if Korolath is liable for shipping an overly rubberized product, then Spartech should be liable to Korolath because it supplied a defective product contrary to what it had been supplying for twenty years. Korolath argues the evidence shows not that Spartech was selling

7

some sort of amorphous product that is economy grade, but that when Korolath complained about some bad batches in 1993, Spartech's plant manager at the time "read the riot act" to Spartech employees, telling them they had to "get it right" for Korolath. Under these circumstances, argued Korolath, the evidence does not show the parties abandoned their contract, but shows Korolath has implied warranties of fitness for a particular purpose, of merchantability, and an express warranty in the contract itself.

In addition to the arguments presented at the hearing, the parties elaborated in their briefing in great detail their respective positions concerning the 1986 requirements contract. Spartech argued that the contract claims against it should be dismissed as the only basis for such claims is the 1986 contract which it argues was expressly terminated as of August 31, 1991, or which was tacitly abandoned by the parties and "replaced by a series of separate independently documented sales transactions" (doc. 95).

Spartech argues the terms of the 1986 contract provided for a three-year term with additional one-year terms unless either party terminated the agreement (Id.). Spartech argues the parties extended the 1986 contract for an additional year, beginning September 1, 1989, and then later for another year, with new terms, until August 31, 1991 (Id.). After such time, Spartech argues there were no further agreements or extensions to the 1986

8

contract, but rather a sales relationship through routine purchase orders, order confirmations and invoices(Id.). As such, Spartech contends it is entitled to summary judgment on all contract claims in the Complaint, which are based on the 1986 agreement, because such agreement terminated long before the 2005 sales at issue in this case (Id.).

Korolath responds that its relationship with Spartech continued unabated from its inception in 1986 until 2005-06, the relevant time frame of the present dispute (doc. 103). Such contract, argues Korolath, provided that Spartech was to produce a "custom blend of virgin high impact polystyrene and high impact polystyrene regrind as required" (Id.). Korolath argues, as it did at the hearing, that the evidence shows that Spartech failed to provide it the quality of material required by the description (Id.). Further, the contract referred to specifications in a "Schedule 2(a)" that neither of the parties have been able to locate; and an October 1990 addendum to the contract allowed for changes to specifications only upon the consent of Korolath (Id.). Korolath argues the record shows no evidence that Spartech ever sought for Korolath's consent to change the specifications of the shims (Id.).

Korolath argues the 1986 contract was not terminated by subsequent amendments, as the amendments expressly reaffirmed the validity of all portions of the 1986 agreement not otherwise

9

amended (Id.). Nor, argues Korolath, is there evidence that parties abandoned the contract, as abandonment requires mutual assent (Id.). In this case, Korolath argues, the parties continued their dealing through the relevant time period (Id.)

Spartech replies that the facts show the 1986 agreement was terminated as of August 31, 1991, and contends Korolath failed to counter such proposition with any evidence (doc. 106). Spartech further replies that no one referred to the 1986 agreement for 14 years, showing it was mutually rescinded (Id.). The real relationship between the parties, according to Spartech, was non-contractual, but only a series of discrete sales of goods (Id.).

Spartech further replies that it never breached the 1986 contract, because such contract had no provisions relating to the compressive strength of the polystyrene sheets it sold Korolath (Id.). Spartech contends that Korolath has never defined what the "custom blend" of regrind and virgin HIPS was required by the 1986 contract (Id.).

The Court agrees with Korolath that the parties' continued course of dealing over a twenty-year period show they never mutually rescinded the 1986 agreement. St Louis & S.F.R. Co. v. Johnston, 133 U.S. 566, 575 (1890)(contract can be inferred from an unequivocal course of dealing). The Court further agrees that the 1986 contract was not terminated by subsequent amendments, as the amendments expressly reaffirmed the validity of all portions of

the 1986 agreement not otherwise amended. Under these circumstances, the Court finds the terms of the 1986 contract were reaffirmed through the passage of time, as evidenced by the 1993 plant manager actions showing Spartech knew it had quality control responsibilities beyond simply shipping a widely varying economy product. Spartech's internal documents also required impact testing, which the facts show it did not do. As such, the Court finds that Korolath's contract claims survive Spartech's motion for summary judgment.

The Court further finds that Spartech's hardware store analogy fails. This is not a case where the only issue is the question of whether component parts were misapplied in construction. That may be one question as a defense relevant to High Concrete's claims, if the evidence shows in particular contexts that "good" shims were badly placed, resulting in problems. The independent question here is rather the inherent quality of the component part, the HIPS, which facts show varied widely in rubber content.

### 2. Remaining Issues

Spartech also attacks Korolath's breach of warranty claims, its claim under the Ohio Products Liability Act, and its claim for contribution and indemnification. The Court will review and address these issues, all of which were addressed in the parties' briefing.

11

### a. Breach of Express and Implied Warranties

Spartech next attacks Korolath's breach of warranty claim (doc. 95). The Court's determination that the parties' 1986 contract was neither rescinded nor terminated disposes of Spartech's argument that Korolath's warranty claims fail as they are grounded in a terminated contract.

Spartech argues, and Korolath does not dispute, that Massachusetts law applies as Massachusetts was the focal point of the sales transactions (Id.). Massachusetts has adopted provisions of the U.C.C. such that a buyer of goods has the burden of proving the existence and terms of express or implied warranties, a breach by seller, and the damages caused in fact and proximately by such breach (Id. citing Wasylow v. Glock, Inc., 975 F. Supp. 370 (D. Mass, 1996).

Spartech argues Korolath fails to establish any express warranty as the 1986 contract has no affirmation or promise as to the compressive strength to the polystyrene sheets Spartech sold (Id.). Moreover, Spartech argues the fact that neither party has been able to find specifications as to the compressive strength shows Korolath has failed to establish an express warranty (Id.). As for implied warranties of merchantability and fitness for a particular purpose, Spartech further argues that the long-term relationship between the parties and their relative roles regarding

the product at issue-—Korolath being sophisticated--show that such implied warranties are inapplicable (Id.).

Korolath responds, first addressing the issue of implied warranties (doc. 103). Korolath argues the evidence shows Spartech failed to ship high-impact polystyrene meeting "fair average quality," as required under Mass. Gen Laws. Ch. 106, §2-314, and therefore Korolath has a viable claim for breach of implied warranty of merchantibility (Id.). Korolath next argues that under Massachusetts law, to establish a claim for implied warranty of fitness for a particular purpose, 1) the seller must be aware of the particular purpose for which the good is to be used, 2) the seller must be aware the buyer is relying upon its skill to furnish suitable goods, and 3) the buyer must actually rely on the seller's skill (Id. citing Mass. Gen. Laws ch. 106, §2-315). Here, Korolath argues, Spartech's discovery responses show it knew the end use of its product was for "construction shims," and that deposition testimony of Spartech employee Bill Augustine shows Spartech knew for many years, at least a decade, that Korolath was using the shims for pre-cast concrete construction (Id.). Korolath further argues it relied on Spartech to produce a quality product, and that Spartech knew this, in part due to Korolath's repeated returns of unsatisfactory product, after which each time Korolath relied on Spartech to make the necessary corrections (Id.).

As for the question of express warranties, Korolath

argues that the 1986 contract required that Spartec provide a custom blend of both virgin and HIPS regrind, which Spartech failed to do (Id.). Korolath further argues that Spartech's additional descriptions of its product, in its Product Summary Manual, can constitute an express written warranty made outside of the written contract, because it reasonably understood and relied upon Spartech's representations that its HIPS had high impact strength and stiffness (Id., citing Coca Cola Bottling Co. v. Weston & Sampson Engineers, Inc., 45 Mass. App. Ct. 120 (1998)).

Spartech replies that though its documents referred to Korolath's use of the shims as "construction shims," this really does not establish its knowledge that such shims were used beyond the general purpose as shims for lightweight objects like doors and windows (doc. 106). As for Bill Augustine's deposition testimony, Spartech argues although Augustine knew the shims were used for precast concrete construction, he did not know how the shims were to be stacked or arranged (Id.). Therefore, Spartech appears to argue that Augustine's limited knowledge about the use of the shims should not be imputed to it as an understanding of reason to know of a particular purpose intended for the shims (Id.). Spartech argues Korolath's citation to other internal quality control documents do not meaningfully and legally fulfill the remaining prongs of the Massachusetts warranty statute (Id.). Finally, Spartech contends Korolath failed to even address Spartech's

argument regarding Korolath's comparative sophisticated skills with regard to the design and use of the product (Id.).

Having reviewed this matter, the Court finds that Korolath has proffered sufficient evidence to support its claims for breach of warranty. Bill Augustine's testimony shows Spartech knew what HIPS was used for, and the parties' long-term relationship can be seen as one in which Korolath reasonably came to rely upon Spartech to produce a consistently quality product. The plant manager's actions in 1993, telling Spartech employees to "get it right," show Spartech knew its product had to at least meet what Massachusetts law requires: fair average quality. Mass. Gen Laws. Ch. 106, §2-314. Although Spartech argues that Korolath is a sophisticated entity, evidence shows Spartech is no simpleton. Spartech internal documents show it had the capacity to conduct quality control impact testing. Finally, the 1986 contract expressly required a "custom blend" product, and there is sufficient record evidence to support the proposition that Spartech failed to provide product consistent with such warranty.

### b. Ohio Products Liability Count

Spartech next attacks Korolath's product liability claim, which is grounded in Ohio law, as the economic losses at issue in this case have occurred in Ohio where Plaintiff is domiciled (doc. 95). Spartech's first argument is that the shims, being installed into the construction projects, became "fixtures" and therefore do

not constitute "products" within the meaning of Ohio law, which defines products as "tangible personal property." (Id. citing Ohio Rev. Code § 2307.71.). Spartech's second argument invokes the economic loss doctrine, arguing the only damages at issue in this case are economic, and therefore Korolath's economic claims fall outside of the product liability statute which requires damages other than economic ones (Id.). Spartech appears to argue that such claims should be asserted under common law, and that they were improperly framed under the Ohio Products Liability Act (Id.).

Korolath responds that there is no question that the product Spartech manufactured was defective, and that the shims were a "product" when manufactured, despite Spartech's argument that the shims became "fixtures" upon installation (doc. 103). In Korolath's view, the question of whether the shims became fixtures involves questions of intent more properly determined by the fact-finder at trial (Id.). As for Spartech's invocation of the economic loss doctrine, Korolath argues it is presumptuous to assume that its claim involves no damages for death, physical injury to person, emotional distress, or physical damage to property other than the product in question (Id.). Spartech replies that Korolath's responses are merely conclusory: there is no doubt the shims became fixtures, and there is no evidence of other than economic damages in this case (doc. 106).

The Court finds no question that the shims were a product

when manufactured and rejects Spartech's creative argument that the shims became fixtures and thus somehow fall outside the reach of the OPLA for this reason. Spartech's second argument is grounded in the economic loss doctrine. Such doctrine precludes recovery in tort for damages of purely economic damages, that is, a plaintiff cannot recover in negligence where there is lack of physical harm to persons and tangible things. <u>Pavlovich v. National City Bank</u>, 435 F.3d 560, 569 (6th Cir. 2006). Here, taking all the evidence in favor of the non-moving party, the Court is unconvinced that the failure of the shims resulted in no property damage. High Concrete has been forced to replace the shims that failed to support concrete structures. A reasonable fact-finder could determine that concrete structures sagging or falling due to the failure of shims constitutes property damage. Although the Court agrees that Korolath's argument borders on the conclusory as there is no evidence before the Court of personal physical injury or death, the Court's understanding of Ohio law is that where the alleged harm goes beyond the product itself, the application of the doctrine is in error. <u>Ferro Corp. v. Blaw Knox Food & Chem. Equip. Co.</u>, 121 Ohio App. 3d 434, 443 (Ohio Ct. App. 1997)(where alleged harm is not to the "product itself," summary judgment granted on negligence claim on the basis that plaintiff had incurred only economic loss is error). Here, the alleged damage is not limited to the shims themselves, but to the structures they were used to

17

support. Accordingly, the Court finds Spartech's invocation of the economic loss doctrine incorrect, and rejects its challenge to Plaintiff's OPLA on such basis.

### c. Contribution and Indemnification

Spartech argues that Korolath has no valid claims for contribution and indemnification because such claims sound in tort, and this action is one of contract, sale, and product liability (doc. 95). Spartech argues the Ohio code sections 2307.25 and 2307.26 are not intended to address rights and remedies that may exist between buyers and sellers of goods (Id.). Under applicable Massachusetts law, argues Spartech, tort-based remedies are not available within the scope of breach of contract actions (Id., citing Anderson v. Fox Hills Village Homeowners Corp., 424 Mass. 365, 676 N.E.2d 821 (1997)).

Korolath responds that though O.R.C. 2307.25 and 2307.26 do indeed provide for a measure of recovery under tort law, there is no bar to a recovery in the present situation (doc. 103). Korolath argues contribution and indemnification apply where there are breaches of implied warranties, as there have been in this case (Id.).

Spartech replies, reiterating its position that the nature of the claims here are purely economic, and therefore tort-based remedies are not available (doc. 106). Spartech argues pass-through liablity is unfair here, where it "manufactured an

essentially raw material, without any compressive strength rating, to the special order of Korolath which then reprocessed the material into shims which it sold under its own brand name and represented to have sufficient compressive strength to support heavy precast concrete construction panels" (Id.).

The Court finds Korolath's position well-taken that breach of an implied warranty can constitute an action in tort law where there is property damage. Coca Cola Bottling Co. v. Weston & Sampson Engineers Inc., 45 Mass. App. Ct. 120, 124 (1998). As discussed above, the Court finds sufficient evidence to support both Plaintiff's warranty claims and the proposition that property damage has occurred in this case. As such, Korolath could well be entitled to indemnification and contribution from Spartech.

## III. Conclusion

As noted herein, the Court finds genuine issues as to Spartech's liability in this case that preclude summary judgment. The Court therefore rejects Spartech's arguments that the evidence shows there was no contract between the parties. The Court similarly rejects Spartech's position that there are no potentially valid express or implied warranties supported by the evidence. The Court further rejects Spartech's invocation of the economic loss doctrine, and concludes that Korolath could be entitled to indemnification and contribution from Spartech.

Accordingly, the Court DENIES Third-Party Defendants

Spartech Plastics, LLC, Alchem Plastics, Inc., and Atlas Alchem Plastics, Inc.'s Motion for Summary Judgment on Korolath of New England, Inc.'s Second Amended Third-Party Complaint (doc. 95).

SO ORDERED.

Dated: August 25, 2009        /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge